NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**GOOGLE INC.,**
*Appellant*

**v.**

**SIMPLEAIR, INC.,**
*Appellee*

_____

2016-1901

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2015-00180.

_____

Decided: March 28, 2017

_____

JON WRIGHT, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for appellant. Also represented by BRIAN LEE, MICHAEL V. MESSINGER, JOSEPH E. MUTSCHELKNAUS.

JONAS BRAN JACOBSON, Dovel & Luner, LLP, Santa Monica, CA, argued for appellee. Also represented by JOHN JEFFREY EICHMANN, GREGORY S. DOVEL.

_____

Before DYK, CLEVENGER, and HUGHES, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Google Inc. ("Google") appeals the decision of the Patent Trial and Appeal Board ("PTAB"), following an *inter partes* review ("IPR"), upholding the patentability of U.S. Patent No. 8,601,154 ("the '154 patent"), owned by SimpleAir, Inc. ("SimpleAir"). The PTAB's decision turned on whether a certain prior art reference cited by Google, in combination with other art, rendered the '154 patent's claims obvious and therefore unpatentable. Under the broadest reasonable interpretation ("BRI") claim construction standard, the PTAB concluded that Google's cited prior art reference did not teach a crucial claim limitation. Without that limitation, Google's obviousness challenge failed, and the PTAB did not reach the additional pertinent questions of whether the proposed combination of references rendered the claims obvious. Google timely appealed to this court.

Claim 1, the sole independent claim of the '154 patent, reads, in relevant part:

1. A method to transmit data from an information source via a central broadcast server to remote computing devices, the method comprising:

(a) generating data at the information source, wherein the information source is associated with an online service relating to the generated data;

(b) identifying one or more users that have subscribed to receive a notification relating to the generated data;

(c) transmitting the generated data to a central broadcast server configured to process the generated data . . . transmit the processed data to receivers communica-

tively coupled with remote computing devices associated with subscribed users, wherein the central broadcast server:

> (i) comprises one or more servers associated with a parser to parse the generated data received from the information source;

> (ii) is communicatively coupled to at least one information gateway . . . ; and

> (iii) is communicatively coupled to at least one transmission gateway . . . .

'154 patent, claim 1.

The disputed term at issue on appeal is the "central broadcast server." The PTAB construed the term central broadcast server, as a matter of the BRI standard, to mean "one or more servers that are configured to receive data from a plurality of information sources and process the data prior to its transmission to one or more selected remote computing device."

Google asserts on appeal that the PTAB erred in its BRI claim construction. According to Google, the correct BRI construction for central broadcast server should not be limited to receipt of data from a plurality of information sources but, instead, should only require receipt from one, or more, information sources. Under its preferred claim construction, wherein a central broadcast server need only be configured to receive from a single information source, Google's cited prior art reference would seem to teach a central broadcast server. Therefore, if Google's claim construction view prevails, the case would require remand for further consideration of Google's obviousness challenge.

SimpleAir argues that Google waived its opportunity to assert its current claim construction because it failed to articulate the same before the PTAB and, instead, actually agreed with the PTAB's BRI interpretation of central broadcast server.

For the reasons set forth below, we agree with SimpleAir that Google waived the claim construction argument it now makes. Therefore, we sustain the PTAB's BRI construction. As it did before the PTAB, Google also maintains that its cited prior art reference teaches a central broadcast server even under the PTAB's BRI of "central broadcast server," *i.e.*, "configured to receive data from a plurality of information sources." Google argues that the PTAB rejected its arguments because it misapplied its own claim construction, wrongfully importing additional, unstated limitations. For the reasons below, we disagree. Consequently, the PTAB's conclusion that Google fails to identify in the prior art a central broadcast server must stand. Google's obviousness challenge fails, and we affirm the PTAB's decision upholding the patentability of the '154 patent claims.

I

SimpleAir maintains that Google waived its argument that the PTAB incorrectly construed central broadcast server to require that it be configured to receive data "from a plurality of information sources." Some factual context is necessary before discussing the waiver doctrine.

Google's IPR was not the first occasion on which to construe the term "central broadcast server." In fact, in three prior district court litigations, courts in the Eastern District of Texas construed the term—the first two involved related patents, within the same family as the '154 patent, with a common specification; the third covered the '154 patent directly. *See SimpleAir, Inc. v. Apple Inc.*, No. 2:09-CV-289-CE, 2011 WL 3880525 (E.D. Tex. Sept. 2, 2011); *SimpleAir, Inc. v. Microsoft Corp.*, No. 2:11-CV-

0416-JRG, 2013 WL 2242163 (E.D. Tex. May 21, 2013); *SimpleAir, Inc. v. Google, Inc.*, No. 2:13-CV-0937-JRG, 2015 WL 1906016 (E.D. Tex. Apr. 27, 2015). In each of these actions, the courts construed central broadcast server to mean the same thing: "one or more servers that are configured to receive data from a plurality of information sources and process the data prior to its transmission to one or more selected remote computing device," the same construction ultimately applied by the PTAB.

Google filed its petition for IPR against the backdrop of these district court constructions. Notwithstanding the fact that the courts had previously applied the claim construction standard outlined in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), rather than the BRI standard employed by the PTAB, Google provided the PTAB with the constructions applied by the district courts for several claim terms, including central broadcast server, with the requirement that it be configured to receive data "from a plurality of information sources." Google made two statements in its petition perhaps indicating some resistance to the district court constructions. First, Google noted that "[t]he Board may, of course, adopt a broader construction than those" reached by the district court. Joint Appendix at 00142. Second, Google stated "that the 'central broadcast server' in the '154 patent receives data from 'the information source' instead of a plurality of information sources construed by the district court regarding the [parent] patent."[1] *Id.* at

---

[1]    Google filed its IPR petition on October 29, 2014, before the district court issued its claim construction order applying the same construction of central broadcast server to the '154 patent. *SimpleAir, Inc. v. Google, Inc.*, No. 2:13-CV-0937-JRG, 2015 WL 1906016 (E.D. Tex. Apr. 27, 2015).

00144. Google did not, however, insist or even request that the PTAB apply a differing construction.

Consequently, in its Decision to Institute IPR, the PTAB adopted the district court constructions, agreeing with the parties that the constructions were "consistent with the broadest reasonable interpretation of those terms in light of the '154 patent specification." Joint Appendix at 00293-94. In its discussion of the central broadcast server claim element, the PTAB specifically noted that the construction required a plurality of information sources.

Throughout the remainder of the IPR proceedings, there appeared to be no disagreement as to the construction of central broadcast server. SimpleAir argued that Google's cited prior art reference ("Yan") did not teach one or more servers configured to receive data from a plurality of information sources, only one information source; Google argued Yan did teach a configuration involving multiple information sources. At the oral hearing, the PTAB asked Google unequivocally about the district court constructions:

> JUDGE ARBES: Counsel, does the Petitioner [Google] agree with all of the interpretations in the District Court order? I believe it was Exhibit 3001.

> MR. MESSINGER: Yeah, the Patent Owner— Petitioner agrees with the District Court interpretations that the Board relied on.

> JUDGE ARBES: Okay. So if we were to agree with the District Court's analysis that that applies under broadest reasonable interpretation, including the reasoning in that opinion, the Petitioner agrees with that?

> MR. MESSINGER: Yeah, Petitioner agrees with that.

Joint Appendix at 00656. Subsequently during the hearing, unprompted by Google, the PTAB asked about the language of claim 1 and whether it permits a single information source, rather than necessarily requiring a plurality of sources for a central broadcast server. Google seemed to indicate its belief that a central broadcast server could be configured to receive from only a single information source, but maintained that, "even if you consider a plurality of information sources, Yan teaches that as well." Joint Appendix at 00658-59. In its final decision denying Google's request to cancel the '154 patent claims, the PTAB explained that the claim constructions were uncontested and that "Google agrees that district court's interpretations also represent the broadest reasonable interpretation of the terms for purposes of this proceeding," citing the portion of the hearing transcript quoted above. Joint Appendix at 00007.

We agree with SimpleAir that Google waived its objection to the PTAB's construction of central broadcast server. "[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below. Moreover, litigants waive their right to present new claim construction disputes if they are raised for the first time after trial." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358–59 (Fed. Cir. 2006); *see also In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) ("Absent exceptional circumstances, we generally do not consider arguments that the applicant failed to present to the Board." (internal citation omitted)). At no point did Google specifically ask the PTAB to construe the claim term differently than the district courts had. Indeed, on multiple occasions Google expressly assented to the district court constructions.

Google makes two arguments for why we should not apply waiver in this case. Google first argues that it sufficiently raised its present claim construction position

before the PTAB, but the PTAB failed to acknowledge any disagreement. "An issue is preserved for appeal . . . so long as it can be said that the tribunal was fairly put on notice as to the substance of the issue." *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1342 (Fed. Cir. 2016) (internal quotation marks omitted). Based on the facts already outlined, we find Google's contention that it "argued from the very beginning" that central broadcast server "needs to receive information only from a single information source" to be unavailing. Google Reply Brief at 4–5. The two comments made in its initial IPR petition were no more than vague insinuations, seeds of doubt that Google perhaps hoped would lead the PTAB to arrive at a different construction on its own volition. They were insufficient to place SimpleAir and the PTAB on notice of Google's alternative view.

Moreover, Google's statements during the oral hearing, although more clearly indicating potential disagreement regarding the central broadcast server construction, also failed to sufficiently preserve the issue for appeal. It does not appear Google would have even mentioned the central broadcast server construction had one of the PTAB judges not raised the issue *sua sponte*; in fact, immediately prior to the discussion, Google proclaimed its full support for adopting all of the district court constructions. We cannot say these off-the-cuff arguments fairly placed the PTAB on notice of Google's contrary claim construction view, or that the PTAB even recognized a true dispute existed. In such circumstances, a finding of waiver is warranted. *See MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1294 n.3 (Fed. Cir. 2015) ("MCM candidly admits that it only raised this argument in a few scattered sentences at the oral hearing below. We have found that 'if a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal.' We deem MCM's argument

waived." (quoting *Fresenius USA, Inc. v. Baxter Int'l*, Inc., 582 F.3d 1288, 1296 (Fed. Cir. 2009))); *Wallace v. Dep't of the Air Force*, 879 F.2d 829, 832 (Fed. Cir. 1989) ("Ordinarily, appellate courts refuse to consider issues not raised before an administrative agency. . . . [T]he issue must be raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue, and in sufficient time that the agency can do so.").

Google also maintains that it can appeal any issue that was "actually decided" in the IPR proceedings, citing *Lifestyle Enterprise, Inc. v. United States*, 751 F.3d 1371, 1377 (Fed. Cir. 2014). The statement made in *Lifestyle* (as dicta and in a highly distinguishable factual setting) does not apply here, where the PTAB did not engage in a full claim construction analysis specifically because the parties agreed that the district court claim constructions should apply. Google cites no authority wherein a party was permitted to pursue a new claim construction argument on appeal, after failing to raise it adequately with the trial court or tribunal in the first instance.

"A party's argument should not be a moving target." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999). More specifically:

> The argument at the trial and appellate level should be consistent, thereby ensuring a clear presentation of the issue to be resolved, an adequate opportunity for response and evidentiary development by the opposing party, and a record reviewable by the appellate court that is properly crystallized around and responsive to the asserted argument.

*Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001) (quoting *Finnigan*, 180 F.3d at 1363). Google failed to argue its proposed construction of central broadcast server before the PTAB, thereby depriv-

ing SimpleAir, the PTAB, and this court a meaningful opportunity to address the merits of Google's arguments.

We agree with SimpleAir that Google's objection to the PTAB's claim construction of central broadcast server—*i.e.*, that a central broadcast server need not be configured to receive data *from a plurality of information sources*—is barred by the doctrine of waiver.[2]

## II

Google also argues that the PTAB, when reviewing the Yan reference to determine whether it taught a central broadcast server, did not faithfully apply its own construction.

First, Google argues that the PTAB imported an unstated requirement that the central broadcast server receive data "*directly*" from a plurality of information sources. Google argues that the PTAB's determination that Yan failed to teach a central broadcast server was incorrect as a matter of law because of the PTAB's reliance on this implicit "direct" receipt limitation that is absent from the claim construction.

We reject Google's mischaracterization of the PTAB's ruling, in attempt to create legal error. While it was indeed Google's position during the IPR that Yan taught servers configured to receive data *indirectly* from a plurality of information, the PTAB was not persuaded by and rejected the argument. The PTAB did not, however, create a requirement that a central broadcast server receive data *directly* from the information sources. Instead, the PTAB found that Yan described a server "con-

---

[2]    SimpleAir also argued that Google's claim construction arguments were barred by judicial estoppel. Because we find waiver applies, we decline to reach this argument.

figured to receive all Netnews data from a single information source – a local host." Joint Appendix at 00014. "What a reference teaches is a question of fact." *In re Beattie*, 974 F.2d 1309, 1311 (Fed. Cir. 1992). We find no legal error in the PTAB's review of Yan's teachings and uphold its factual determination as supported by substantial evidence.

Second, Google argues that the PTAB imported another unnecessary requirement that multiple servers must be "*interconnected*" in order to function together as a central broadcast server. Google maintains that Yan teaches individual servers that receive data from individual information sources, and together they would constitute a central broadcast server, but for the PTAB's improper requirement that the servers be interconnected.

Again, we disagree that the PTAB implied an uncalled-for limitation. The PTAB explained that "Google has not explained sufficiently how two separate servers, each of which is configured to receive data from a different single information source, disclose a central broadcast server, which must be configured to receive information from multiple information sources." Joint Appendix at 00019. The PTAB did not affirmatively require that separate servers be interconnected in order qualify as a central broadcast server. Rather, it found that Google failed to satisfy its burden of proof to show that the individual servers described in Yan were indeed "configured to receive data from a plurality of information sources," despite seemingly being entirely independent (not interconnected, not networked, etc.). This finding is supported by substantial evidence.

The PTAB certainly did not require that, to be a central broadcast server, individual constituent servers specifically must be "interconnected." But even assuming that the PTAB did imply an additional limitation requiring some sort of relationship among individual servers, we

find such a requirement appropriate. The '154 patent itself describes "a *network of servers* 33 in the central broadcast server 34, such as the FTP server 102 and the SMTP server 104 illustrated in FIG. 2." '154 patent, col. 8 ll. 9–15 (emphasis added). Nothing in the '154 patent supports the view that two unrelated servers would constitute a central broadcast server. To the extent it did so, the PTAB was justified in reading in a relationship requirement to prevent the untenable result that "any two separate servers would be a central broadcast server no matter how they are configured or related to one another." Joint Appendix at 00019.

CONCLUSION

For the reasons set forth above, we affirm the PTAB's decision.

**AFFIRMED**

COSTS

No costs.